UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

Suzanne M.,

        Plaintiff,

 -against-            6:18-CV-485 (LEK)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## **MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On April 19, 2018, Plaintiff Suzanne M. filed an action in this Court under the Social Security Act. Dkt. No. 1 ("Complaint"). She seeks review of the determination of the Commissioner of Social Security that she was not disabled during the period June 19, 2014 through the date of the Administrative Law Judge's ("ALJ's") decision, March 7, 2017 (the "relevant period"), and is therefore ineligible for disability insurance benefits and supplemental security income. Compl.; <u>see also</u> Dkt. Nos. 9 ("Record"); 12 ("Plaintiff's Brief"); 13 ("Defendant's Brief"). For the reasons that follow, the Commissioner's determination of no disability is affirmed.

**II. LEGAL STANDARD**

 **A. Standard of Review**

When a district court reviews an ALJ's decision, it must determine whether the ALJ applied the correct legal standards and whether his or her decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision-maker's conclusion. <u>Halloran v. Barnhart</u>,

362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court will defer to the ALJ's decision if it is supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). However, a court should not uphold the ALJ's decision—even when there is substantial evidence to support it—if it is based on legal error. Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

### B. Standard for Benefits

According to Social Security Administration ("SSA") regulations, a disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). An individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 935 (2d Cir. 1984). In order to receive disability benefits, a claimant must satisfy the requirements of a five-step evaluation process. § 404.1520(a)(1). If the ALJ is able to determine that the claimant is disabled or not disabled at any step, the evaluation ends. § 404.1520(a)(4). Otherwise, the ALJ will proceed to the next step. Id.

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful work activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled under SSA regulations. Id. At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe," i.e., that "significantly limits" the claimant's

2

"physical or mental ability to do basic work activities." §§ 404.1520(a)(4)(ii), 416.920(c). If the claimant does not have such an impairment, the claimant is not disabled under SSA standards. Id. At step three, the ALJ asks whether the claimant's medically determinable physical or mental impairment(s) are as severe as an impairment of the requisite duration listed in Appendix 1 of Subpart P of § 404. § 404.1520(a)(4)(iii); 20 C.F.R., Pt. 404, Subpt. P, App. 1. If the claimant's impairment(s) are as severe then the claimant is disabled. § 404.1520(a)(4)(iii). If not, the ALJ moves on to step four and reviews the claimant's residual functioning capacity ("RFC") and past work. § 404.1520(a)(4)(iv). A claimant is not disabled under SSA standards if she can perform past work. Id. If the claimant cannot perform her past work, the ALJ decides at step five whether adjustments can be made to allow the claimant to work somewhere in a different capacity. § 404.1520(a)(4)(v). If the claimant "cannot make an adjustment to other work," then the claimant is disabled. Id. In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

### III.  BACKGROUND

**A. The Disability Allegations and Plaintiff's Testimony**

Plaintiff is a fifty-five-year-old woman who has at least a high-school education and has a certification to practice as a licensed practical nurse ("LPN"). R. at 27, 39, 43. She has the past work of a LPN. Id. at 26. Plaintiff seeks a finding of disability due to fibromyalgia, anxiety, depression, panic attacks, herniated disks in the neck, back pain, PTSD, chronic fatigue syndrome, arthritis, migraines, irritable bowel syndrome, carpal tunnel syndrome, bone spurs on her heals, right knee pain, right eye vision problems, memory loss, and dizziness. Id. at 106–07.

3

Plaintiff testified she last worked in any capacity as a licensed practical nurse in 2010. Id. at 40. In explaining why she is unable to work today, Plaintiff testified about the "pain of being on my feet" or in "any upright position." Id. at 41. She further testified, "As soon as I'm up, the pain just gets worse." Id. She added, "I have problems with remembering things now and, like, a brain fog that just – sometimes I can't even think clearly or get words to come out the way I need to." Id. Upon waking up in the morning, Plaintiff testified that she is "very stiff" in her neck, shoulders, lower back, and feet, which makes it "hard to get around." Id. at 50. Plaintiff reported that there are "days when [she] can't even [shower] because [she is] too tired and in too much pain." Id. at 51. Plaintiff further reported that her neck, shoulders, lower back, and feet give her the most pain, with her neck and shoulders hurting "constantly." Id. at 57–58. Plaintiff testified she has a "burning, deep ache" in the "top parts of her arms" and that "things [Plaintiff does with her] hands or [her] arms increases that pain," which in turn gives Plaintiff headaches. Id. at 58. Regarding her lower back, Plaintiff reported she feels a "sharp ache," which "burns" and which travels "down [her] tailbone into [her] buttock" if she remains on her feet for twenty-five minutes or sits for too long. Id. at 59. Plaintiff reported that she can stand about "25 minutes" and walk about "7 minutes" before she needs to sit. Id. at 60. She testified she can sit "about an hour" before she needs to stand up and that she can "probably lift 10-15 pounds." Id. at 61. Plaintiff reported she had carpal tunnel surgery on her right hand in 2015, which relieved the "tingling" sensation in her hand and prevented her hand from "going to sleep, but it didn't take care of the pain." Id. at 62. She testified that "[t]here's not even a day where I have light pain. Every day is painful, and everything I do makes the pain go up." Id.

**B. The ALJ's Decision**

On March 7, 2017, ALJ David J. Begley issued a decision finding that Plaintiff had not been disabled since June 19, 2014, the amended alleged onset date for Plaintiff's disabilities. R. at 28.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 19, 2014. Id. at 17. Second, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, macular degeneration, anxiety, depression, bilateral carpal tunnel syndrome status-post releases, obesity, and mild degenerative disc disease. Id. at 18. Third, the ALJ found that Plaintiff did not have impairment(s) that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 (§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Id. at 19–21. Fourth, the ALJ found that, during the relevant period, Plaintiff had the RFC to perform light work as defined in § 416.967(b) except the claimant:

> is prohibited from climbing ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger bilaterally. The claimant needs to avoid concentrated exposure to extreme heat and cold, and to humidity and wetness. The claimant needs to avoid slippery and uneven surfaces, as well as hazardous machinery, unprotected heights, and open flames. The claimant is limited to jobs that should be performed with only monocular vision in the left eye. The claimant is limited to low stress jobs, defined as having no hazardous conditions, only occasional decision making required, or only occasional changes in the work setting. The claimant is also limited to semi-skilled jobs with a specific vocational preparation (SVP) of three to four.

Id. at 21.

In making this determination, the ALJ considered opinion evidence in accordance with

5

the requirements of §§ 404.1527 and 416.927 and Social Security Rulings ("SSRs") 96–2p, 96–5p, 96–6p, and 06–3p. Id. He also considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence (based on the requirements of §§ 404.1529 and 416.929 and SSR 96–4p). Id. The relevant portions of the ALJ's analysis of the available opinion evidence and Plaintiff's symptoms are discussed below.

Finally, while the ALJ found Plaintiff unable to perform any past relevant work, id. at 26, he found that Plaintiff could perform work as a "mail room clerk," "price marker," or "office helper." Id. at 28.

Plaintiff appealed the ALJ's decision, but the SSA's Appeals Council denied review. Id. at 1–3.

## IV. DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to find that Plaintiff has a presumed disability pursuant to listings at 20 C.F.R. Part 404, Subpt. A, App. 1 § 1.04; (2) subordinating the opinions of Dr. Hom Neupane, a rheumatologist and Plaintiff's treating physician, and Nurse Practitioner Linda O'Connor to that of Dr. Kautilya Puri, a consultative examiner; (3) improperly considering Plaintiff's subjective complaints of pain in determining Plaintiff's RFC; (4) improperly concluding that Plaintiff can perform jobs that are "low stress" and that are "semi-skilled . . . with a specific vocational preparation (SVP) of three to four," R. at 21; and (5) failing to consider a later onset date for Plaintiff's disability.

### A. Listing 1.04

Plaintiff claims that her impairments satisfy the requirements of Listing 1.04 (disorders of

6

the spine). Pl.'s Br. 12–13. To show that an impairment meets or is medically equal to a listing, a claimant must show that her impairments "meet all of the specified criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); accord Solis v. Berryhill, 692 F. App'x 46, 48 (2d Cir. 2017); King v. Astrue, 32 F. Supp. 3d 210, 218 (N.D.N.Y. 2012). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Barber v. Comm'r of Soc. Sec., No. 15-CV-338, 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016), report and recommendation adopted sub nom. Barber v. Colvin, No. 15-CV-338, 2016 WL 4402033 (N.D.N.Y. Aug. 18, 2016) (quoting Sullivan, 493 U.S. at 530) (internal quotation marks omitted). To satisfy this burden, a claimant must show abnormal physical findings that "must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.00(D).

Section 1.04 addresses disorders of the spine and requires a showing of a "compromise of a nerve root . . . or the spinal cord" with:

> (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> (B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medical imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> (C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

§ 1.04(A)–(C).

The ALJ found that while "[t]he medical evidence establishes degenerative disc disease of the cervical and lumbar spine," Plaintiff did not meet any of the additional listing criteria as outlined in § 1.04(A)–(C) above. R. at 19. The ALJ did not err in finding that Plaintiff's impairments do not satisfy the requirements of § 1.04. Plaintiff points to 2016 MRIs of her spine as evidence that she meets the § 1.04 listing criteria, Pl.'s Br. 3–5, 12–13, but the 2016 cervical spine MRI did not reveal nerve root compression or spinal arachnoiditis and the 2016 lumbar spine MRI did not reveal nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, R. at 641, 831–32. Plaintiff also argues that the record contains findings of a positive straight-leg raising test and muscle weakness, which demonstrate that Plaintiff meets the § 1.04 listing criteria. Pl.'s Br. at 13. Plaintiff does not cite to a specific part of the record demonstrating a positive straight-leg raising test, and Plaintiff fails to account for clinical findings in the record indicating full strength, a negative straight-leg raising test, normal muscle tone, and normal coordination. For instance, Dr. Michelle M. Johnston and Dr. Kautilya Puri, a consultative examiner, observed clinical findings of full (5/5) strength in her extremities and a negative straight-leg raising test, R. at 492, 600, 734, while Dr. Alan M. Smiley listed a "normal exam" of the low back, hips, knees, feet and ankles, id. at 520, 522, 524. Dr. Hom Neupane, a rheumatologist and Plaintiff's treating physician, found Plaintiff to have normal muscle tone and coordination. Id. at 500. In sum, the Court finds that the ALJ correctly determined that Plaintiff does not satisfy the criteria of Listing 1.04.

**B. Plaintiff's RFC**

In determining Plaintiff's RFC, the ALJ must consider all of the relevant medical and other evidence in the record to assess her ability to meet the physical, mental, sensory, and other

requirements of work. § 404.1545(a)(3)–(4); see also SSR 96–8p. Here, the ALJ determined that Plaintiff had the RFC to perform light work as defined in §§ 404.1567(b) and 416.967(b) (with certain exceptions as described above). Plaintiff has not met her burden of proving she cannot perform her RFC. See §§ 404.1545(a)(3), 416.945(a)(3).

*1. The ALJ's Treatment of Medical Opinions*

Plaintiff argues that the ALJ should have afforded greater weight to the opinion of her treating physician, Dr. Neupane, and that of Nurse Practitioner ("NP") Linda O'Connor. Pl.'s Br. at 15–16. The SSA regulations provide that "opinions from [a claimant's] treating sources" are "give[n] more weight" than other sources, and are even given "controlling weight" when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. § 404.1527(c)(2). "[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight. §§ 404.1527(c)(2), 416.927(c)(2); Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). Factors that indicate the weight to be accorded to the treating physician's opinion include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also § 404.1527(c)(2). The law does not require "slavish recitation of each and every factor" listed in § 404.1527(c) so long as "the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013).

The ALJ only gave "little weight" to Dr. Neupane's June 2016 medical source statement,

9

which appears to be the only opinion evidence Dr. Neupane provided. In this statement, Dr. Neupane opined that Plaintiff has 18/18 tender points, "tender muscles," "tender joints," and "inflammatory arthritis" Id. at 25, 644–45. The ALJ afforded Dr. Neupane's opinion the appropriate weight. He observed that "[a]lthough Dr. Neupane is a treating source, there is no evidence of a longitudinal treatment history as he reported that he had been treating the claimant for less than a year with no comment regarding the frequency of treatment." R. at 25. A review of the record indicates that Dr. Neupane only examined Plaintiff on three occasions before he rendered his opinion in this case. Id. at 500, 509–10, 612. The ALJ also discounted Dr. Neupane's assessment based on its structure as a form report. Id. at 25. "Form reports, in which a source's only obligation is to fill in a blank or check off a box, are entitled to little weight in the adjudicative process." Burnette v. Astrue, No. 12-CV-6270, 2013 WL 3422447, at *10 (W.D.N.Y. July 8, 2013) (citing cases). And the less consistent a treating physician's opinion is "with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The record, including Dr. Neupane's own treatment notes, conflicts with his opinion that Plaintiff would need to "be off-task for least 25% of the time in an 8-hour block of time," that she would be absent from work "[m]ore than four days per month," and that she needed to "lay down intermittently throughout the day." R. at 645–47. Indeed, Plaintiff reported to Dr. Neupane in September 2015 that she "gets episodes of weakness and shakiness of all 4 extremities lasting" for just "1-2 day[s] once a month," that she has morning stiffness in her hip and various joints for just "10 minutes," and that she has "no gait difficulties." Id. at 506.

  Moreover, Dr. Neupane's opinion was inconsistent with other medical findings in the record. Dr. Smiley, who observed Plaintiff in March, June, and September 2014, reported a

10

"normal exam" of the low back, hips, knees, feet, and ankles, "normal gait," and no "synovitis" or inflammation in the "small joints of the hands, wrists, elbows, shoulders." Id. at 520, 522, 524. And while Dr. Johnston found "mild tenderness" in Plaintiff's lumbar spine, she found that Plaintiff "[w]alks with a normal gait," that Plaintiff had a negative straight-leg test, and that Plaintiff had normal reflexes. Id. at 600, 734. NP O'Connor consistently observed that Plaintiff had a "steady" or "normal" gait upon examining Plaintiff in 2015 and 2016. Id. at 675, 695, 715, 748. She found Plaintiff's lower extremities to be "[n]ormal to inspection and palpation," to have full strength bilaterally, and to have full range of motion bilaterally. Id. at 695, 715. Finally, Dr. Puri found that Plaintiff's "gait with and without" a cane to be the same, that Plaintiff was able to sit down in and rise from a chair without difficulty, and that Plaintiff had full range of motion and full strength (5/5) bilaterally in her upper and lower extremities. Id. at 491–92. This extensive medical evidence shows that the ALJ did not improperly discount Dr. Neupane's opinion when determining Plaintiff's RFC.

The ALJ also correctly afforded NP O'Connor's opinion "little weight." Id. at 25. NP O'Connor opined that the Plaintiff could barely even perform sedentary work with no postural activities and severe limitations on reaching and manipulative activities. R. at 672. She further opined that Plaintiff's pain, fatigue, and concentrating deficits would prohibit her from working at least 50 percent of an eight-hour workday. Id. According to SSR 06–3p, "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06–3p. "Acceptable medical sources" are further defined by regulation as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. § 416.913(a). In contrast, nurse practitioners are defined as "other

11

sources" whose opinions may be considered when evaluating the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight. § 416. 913(d)(1). The ALJ "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on the all evidence before" him or her. Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995); see also Genier v. Astrue, 298 F. App'x 105, 108–09 (2d Cir. 2008) ("[M]any of the key medical opinions cited during the benefits period at issue were those of a physician's assistant and a nurse practitioner—and not a physician. As such, the ALJ was free to discount the assessments accordingly in favor of the objective findings of other medical doctors. There was no treating physician error.").

NP O'Connor was an "other source[]" rather than an "acceptable medical source" under the SSA regulations and, hence, she could not be a "treating source" for purposes of the treating physician rule. "There was no treating physician error" in assigning her little weight. See Genier, 298 F. App'x at 108–09. Additionally, the ALJ correctly determined NP O'Connor's opinion did not accord with the medical evidence contained in the record. R. at 25. For instance, while NP O'Connor concluded Plaintiff possessed significant limitations in her ability to lift, carry, sit, stand, and walk, id. at 671, Dr. Puri observed Plaintiff's "gait with and without" a cane to be the same, that Plaintiff was able to sit down in and rise from a chair without difficulty, and that Plaintiff had full range of motion and strength bilaterally in her upper and lower extremities. Id. at 491–92. Given these inconsistences, this Court concludes that the ALJ did not err in declining to afford NP O'Connor's opinion greater weight.

Plaintiff further argues that the ALJ should have afforded lesser weight to the opinion of her consultative examiner, Dr. Puri. Pl.'s Br. at 15–16. It is true that normally "a consulting

12

physician's opinions . . . should be given limited weight" because "consultative exams are often brief, are generally performed without the benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day," Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990). And it is true that such an opinion is problematic when vague, like that of Dr. Puri.[1] R. at 25; see also Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (concluding that an ALJ, in determining claimant's RFC, could not rely on a consulting examiner's "remarkably vague" opinion that the claimant "should be able to lift . . . objects of a mild degree of weight on an intermittent basis") (citing Curry, 209 F.3d at 123–24). But an ALJ may give great weight to a consultative examiner's opinion if it is consistent with record evidence. Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016). Dr. Puri's opinion, as discussed above, is consistent with other opinion evidence and is supported by medical evidence, see, e.g., R. at 641 (indicating Plaintiff has degenerative disc disease of the spine), 644 (indicting Plaintiff has "tender muscles" and "tender joints"). Thus, the Court concludes that the ALJ afforded Dr. Puri's opinion the appropriate amount of weight.

*2. The ALJ's Treatment of Plaintiff's Credibility*

---

[1] Dr. Puri opined that the Plaintiff has "mild" limitations to her gait or to activities of daily living. R. at 492. He also opinion that Plaintiff has "mild" limitations of squatting, bending, stopping, keneling, overhead reading, and lifting weights.

Plaintiff argues that the ALJ did not properly consider Plaintiff's subjective complaints of pain in determining Plaintiff's RFC. See Pl.'s Br. at 15. When considering Plaintiff's symptoms, the ALJ must ascertain whether there are medical impairment(s) shown by "medically acceptable clinical or laboratory diagnostic techniques" that "could reasonably be expected to produce the pain or other symptoms alleged." §§ 404.1529(b), 416.929(b). If the objective medical evidence shows a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity and persistence of those symptoms by looking at "all of the evidence from [the claimant's] medical sources and nonmedical sources." See §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2). And if a claimant's symptoms suggest a greater restriction than demonstrated by objective evidence, the ALJ considers various factors, such as the claimant's daily activities and the type and dosage of any medication the claimant has taken to alleviate her pain. See §§ 404.1529(c)(3), 416.929(c)(3). "It is the Secretary's function[,] not the district court's[,] to appraise the credibility of witnesses, including the plaintiff." Serra v. Sullivan, 762 F. Supp. 1030, 1034–35 (W.D.N.Y. 1991).

The ALJ did not err in finding the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible. Id. at 22–25. Not only are Plaintiff's allegations of "totally disabling physical and mental symptoms and limitations" inconsistent with the medical evidence available in the record, they are also undermined by Plaintiff's admitted ability to shop, cook, clean, do laundry, read, and "go[] out." Id. at 23–25, 490; see also id. at 52–54; §§ 404.1529(c)(3), 416.929(c)(3). And while Plaintiff argues her "efforts to address [her] pain have been exhaustive," Pl.'s Br. at 15, she ceased taking medication for her pain because of her "fear of side effects," R. at 411; see also §§

14

404.1529(c)(3), 416.929(c)(3). Finally, Plaintiff asserts that "[n]o treating source suggested that she was exaggerating symptoms of pain, weakness, and fatigue," Pl.'s Br. at 15, but the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Rock v. Colvin, 628 F. App'x 1, 3 (2d Cir. 2015) (citing Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)) (internal quotation marks omitted). The ALJ's adverse credibility findings comply with the SSA regulations and is supported by substantial evidence. Hence, the Court concludes these findings must stand.

### 3. *The ALJ's Treatment of Plaintiff's Alleged Mental Impairments*

Plaintiff takes issue with the ALJ's conclusion that Plaintiff is limited to jobs that are "low stress" and that are "semi-skilled . . . with a specific vocational preparation (SVP) of three to four." R. at 21. She argues that Dr. Toby K. Davis's "neuropsychological report . . . documents that this plaintiff suffers from a combination of exertional and non-exertional impairments that dramatically reduce the occupational base for the types of simple, low stress[,] light occupations that the ALJ found appropriate." Pl.'s Br. at 16. Yet much of Dr. Davis's report is speculative and includes "no more than" Dr. Davis's "recording of [Plaintiff's] own reports of pain," which means Dr. Davis's opinion is not entitled to deference. See Polynice v. Colvin, 576 F. App'x 28, 31 (2d Cir. 2014). For example, Dr. Davis opined that Plaintiff "has likely experienced a disturbing traumatic event in the past, an event that continues to distress her and produce recurrent episodes of anxiety," R. at 368, but that report contains no documentation of such an event. And, as another example, Dr. Davis concludes Plaintiff "is likely to be plagued by thoughts of worthlessness, hopelessness, and personal failure . . .[,] is likely to show a

disturbance in sleep pattern, a decrease in level of energy and sexual interest, and a loss of appetite and/or weight" because of Plaintiff's self-reports of "a number of difficulties consistent with a significant depressive experience." Id. Furthermore, Plaintiff has failed to demonstrate how Dr. Davis's report shows how Plaintiff has impairments that "dramatically reduce the occupational base for the types of simple, low stress[,] light occupations that the ALJ found appropriate." Pl.'s Br. at 16. Consequently, the ALJ's determination of Plaintiff's RFC adequately accounts for Plaintiff's mental limitations.

### C. Plaintiff's Disability Onset Date

Plaintiff contends that the ALJ failed to consider a later onset date of August 21, 2014 for Plaintiff's disability, which is the date on which Plaintiff turned 50, instead of March 28, 2012, which is the original alleged onset date. Pl.'s Br. at 16–17. The crux of Plaintiff's argument is that ALJ should have found Plaintiff to be limited to sedentary work as described in § 416.967(a), not light work as outlined in § 416.967(b), because, had the ALJ done so, Plaintiff would have been found to be disabled because she has already attained the age of 50. Id. While Plaintiff might find it a "miscarriage of justice" that Plaintiff may "now have to wait until retirement age in order to collect on [] Social Security benefits," id. at 17, "[t]he Court's scope of review is thus limited to determining whether the Commissioner's findings were supported by substantial evidence in the record . . . ." Burnette, 2013 WL 3422447, at *10 (citing Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). As discussed above, the ALJ's determination that Plaintiff has an RFC to perform light work is supported by substantial evidence and the Court therefore affirms his decision to deny Plaintiff's claim.

### D. Remand for Calculation of Benefits

Finally, Plaintiff argues that this Court should remand the case for a calculation of benefits. Pl.'s Br. at 17–18. A remand for calculation of benefits is warranted "when the record provides persuasive proof of disability . . . ." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); see also Butts v. Barnhart, 388 F.3d 377, 385–86 (2d Cir. 2004). As Plaintiff has failed to prove she is disabled, then remand on this issue is not warranted. See Parker, 626 F.2d at 235.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's determination of no disability is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:	September 26, 2019
	Albany, New York

Lawrence E. Kahn
U.S. District Judge